MARY BAIN, Executrix, &c., Respondent, v. EBENEZER H. BROWN, Appellant.

(GENERAL TERM, FIRST DEPARTMENT, 1872.)

The plaintiff made a contract to sell his real estate upon the advice of his agent. Some two days after the latter took an assignment from the vendee and made a new contract for sale to other purchasers at an increased price. He then informed the plaintiff that his (defendant's) assignor had sold the property to the last vendees, and, suppressing the price, obtained from him a deed, with consideration in blank to be filled in, to the purchasers. *Held*, that the defendant's confidential relation to the plaintiff continued until after the execution of the deed, and that the plaintiff was entitled to the benefit of the increased price.

THIS was an appeal by the defendant from a judgment entered upon the report of a referee in favor of the plaintiff. The facts appear in the opinion.

*John H. White*, for the respondent.

*Erastus Cooke*, for the appellant.

Present—INGRAHAM, P. J., and FANCHER, J.

FANCHER, J. The plaintiff's testator, James Bain, was, in April, 1867, and for several years prior to that time, the owner in fee of two lots, and buildings thereon, in Fifth street, in the city of New York, and, also, of certain leasehold property on the same street, comprising three other lots and buildings thereon; and he continued to own the same until the 16th April, 1867, when a contract to sell the property to John Ludlow was executed.

The testator was a resident of Philadelphia; and the defendant was engaged in the business of a real estate broker in the city of New York. For some time anterior to the contract the defendant acted as the agent of the testator in respect of the property, had the care and management of the same, and collected and paid over to the testator the rents of the premises.

Bain *v.* Brown.

On the 6th April, 1867, the defendant wrote a letter to James Bain, the testator, in which he stated, in substance, that the houses in question would need considerable expenses put upon them; that the fee of the leasehold premises could not be obtained for some years, and that he thought there was a party who would buy the property if he, the said Bain, would take $17,000 therefor; $5,000 to be paid in cash on or before the first day of June, and the balance by a mortgage for $12,000, payable in three years, with interest. The defendant did not, at that time, disclose the name of the proposed purchaser. On the 12th day of April, 1867, the defendant again wrote to Bain, stating that he had not rented the houses for another year; that the offer he had sent was the best ever made to him for the property; that the houses would need repairing and painting; that the health board were very rigid about yards, sinks and cess-pools, and were requiring each house to be connected with the street sewer; and that he advised a sale at the best offer they could get. It does not appear what reply, if any, Bain made to this communication; but it appears that he saw the defendant in New York on the 15th of April, 1867; and that on the 17th day of April, 1867, the defendant again wrote to Bain, stating that he had sold the property to Mr. John Ludlow for the price of $17,000; that he had signed the contract for Bain, and received $500 on account; also stating how the $17,000 were to be paid and secured, and that in due time the defendant would prepare the deed and assignments, and also the bonds and mortgages if he desired it. It was on the 16th day of April, 1869, that the defendant executed and delivered the contract with said Ludlow, signing the name of James Bain thereto "per E. H. Brown;" and he testifies that on that day or the next day he forwarded a duplicate thereof to Bain at Philadelphia for execution, who brought it back to New York, where it was also executed by Bain.

According to this testimony Bain could not have received the contract and returned to New York with it, so as to have signed it in New York earlier than the seventeenth or

eighteenth of April, and it was perhaps later; yet Franken-heim swears that he saw the defendant on the subject of this property at his office, 121 Nassau street, on the eighteenth of April, and asked him about the property. He testifies that the defendant then said the houses were for sale; and, being asked the price, answered $25,000 for the five houses. Frank-enheim swears he saw the defendant the next day, and defendant said to him and his partner on that occasion, at their store, that the property had been sold, but that the pur-chaser, Mr. Ludlow, had authorized him to sell the same again at a profit; that Ludlow had purchased the same at $25,000, and that he, the defendant, would sell the property on behalf of Ludlow for $26,000. Frankenheim and his partner, Kellner, then, on the nineteenth of April, paid the defendant $500, for which he gave a receipt; and, afterward, a written contract, dated the 22d day of April, 1867, for the sale of the property to Frankenheim & Kellner for $26,000, was executed, signed by them and the defendant. This con-tract is between the defendant of the one part, as seller, and Frankenheim & Kellner, of the other part, as purchasers.

The defendant denies that he told Frankenheim on the nineteenth of April that he had sold the property to Ludlow, and he denies that he told him he had sold the property for $25,000; but, giving the defendant the benefit of these denials, he does not deny the sale to Frankenheim & Kellner for $26,000, as stated by them; nor that the bargain with them was made on the nineteenth, and the contract executed on the twenty-second of April.

It appears that, on the same twenty-second of April, an assignment was made to the defendant by John Ludlow of his contract; and thereafter, on the 7th day of May, 1867, the defendant wrote to Bain stating that Mr. Ludlow had sold his purchase of the Fifth street property to a couple of Germans, Frankenheim and Killner; that they wished to repair the property and did not like to do much until the title was passed; and in that letter the defendant also uses this language: " They therefore propose to take title before

the first of June and pay you the money due you.    They are
to execute mortgages and carry out all the conditions about
the bonds and mortgages that are in contract with Mr. Lud-
low."    On the twenty-second of May the defendant wrote to
Bain another letter, inclosing the deed and assignments for
execution, and accompanied the same with a copy of the first
contract with Ludlow.    In that letter he said : " The amount
of consideration money can be filled in, when delivered, and
the division of the amount ($17,000) can be made between
the deed and the assignment of the leases."    The deed was
accordingly executed and delivered, and it is not pretended
that Bain was ever informed by the defendant or any other
person of the sale for $26,000, until after the delivery of the
deed by him and the closing of the transaction, so far as Bain
was concerned, on the basis of a sale at $17,000.

The very statement of the facts of this case carries with it
a cogent argument against the defendant.    In his letter to
Bain of the 7th of May, 1867, he treats Frankenheim and
Killner as in privity with Bain, and says : " Ludlow has sold
his purchase to a couple of Germans, Frankenheim and
Killner ; they propose to take title before the first of June,
and pay you the money due you."    There was no suggestion
then that defendant had purchased Ludlow's contract for
himself, nor that the defendant was to receive payment for
himself from Frankenheim and Killner ;  nor that the defend-
ant, as principal, was to settle with Bain on the terms of the.
Ludlow contract.    The defendant was an agent of Bain in
respect of the sale of the property ; and, having undertaken to
act for him in the matter, could not act in the same matter
for himself until his agency ceased.    This principle is con-
ceded by the counsel for the defendant, but he contends it
has no application to this case for the reason that the agency
of the defendant ceased on the execution of the contract with
Ludlow.

But the facts of the case negative this assumption.    The
defendant himself did not act towards Bain nor write to
him in such a way as that Bain could have understood the

defendant considered his agency terminated. On the contrary, the defendant, as agent of Bain, retained the Ludlow contract until he forwarded it to Bain with the deed and assignments in May. He also wrote to Bain the letters already referred to, using such language as plainly imported his agency, and directly asserted the privity between Bain, as vendor, and Frankenheim and Killner, as purchasers.

It is clear that the defendant had a duty to perform, as the agent of Bain during all this time, in respect of the sale of the property, which duty had not terminated when he attempted to act for himself. His employer was entitled to all his skill and service touching the sale of the property, and to the benefit of any bargains he could make respecting it, as well as any advantages growing out of the agency. The defendant all the time, up to the execution of the deed by Bain, stood in such a relation of confidence to him as to impose upon the defendant the utmost degree of good faith and fair conduct. "*Nemo potest in rem suam auctor esse, qui negotia aliena gerunt.*" There was a duty of fidelity to the confidence which Bain had reposed in the defendant, that was inconsistent with his becoming a purchaser and seller of the property for himself. The law delivers him from temptation in such a case, and will not sanction a breach of the confidence which the defendant has voluntarily assumed. Were the law otherwise, the door would be open to much injustice; for the principal, without warning or notice of the change of relation of his agent, would not himself exercise the vigilance necessary to protect his interests. In such a case it is not necessary to inquire whether or not the agent was actuated by any fraudulent purpose. His fiduciary relation prevents him from assuming to himself any advantages of bargains touching the subject of his agency. (*Conkey* v. *Bond*, 36 N. Y., 427; *Gardner* v. *Ogden*, 22 id., 327.)

We think the judgment entered on the report of the referee should be affirmed.